UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ALPHONSO RUSSELL,

                    Petitioner,                          Case No. 2:23-cv-116

v.                                                       Honorable Robert J. Jonker

BARBRA STOREY,

                    Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Alphonso Russell is incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. On April 26, 2018, following a three-day jury trial in the Ingham County Circuit Court, Petitioner was convicted of two counts of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b, one count of unlawful imprisonment, in violation of Mich. Comp. Laws § 750.349b, one count of assault by strangulation, in violation of Mich. Comp. Laws § 750.841b, and one count of domestic violence, third offense, in violation of Mich. Comp. Laws § 750.814. On July 25, 2018, the court sentenced Petitioner as a third-habitual offender, Mich. Comp. Laws § 769.11, to concurrent prison terms of 25 to 50 years for CSC-I, 20 to 30 years for unlawful imprisonment, 13 years, 4 months to 20 years for assault by strangulation, and 6 years, 8 months to 10 years for domestic violence, third offense.

On June 16, 2023, Petitioner filed his habeas corpus petition raising ten grounds for relief, as follows:

I.    Mr. Russell's Due Process rights under the Fifth and Fourteenth Amendment[s] of the United States Constitution [were] violated where the prosecution failed to present sufficient evidence to sustain a guilty verdict or alternatively defendant is entitled to a new trial because the verdict was against the great weight of the evidence.

II.   Defendant's conviction must be vacated where his trial counsel did not provide effective assistance of counsel as required by the Sixth and Fourteenth Amendments to the United States Constitution when he failed to call witnesses to corroborate defendant's anticipated testimony or to impeach the complainant's testimony.

III.  Mr. Russell was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth amendments when his trial counsel did not impeach the complaining witness with prior evidence, statements made to police or sworn testimony where the credibility of the witness was critical to the outcome of the trial.

IV.   Mr. Russell was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendment when his trial counsel did not obtain evidence from Mr. Russell's cell phone which was seized and copied by the police and the phone contained photographs and texts that would have undermined the testimony of the complainant.

V.    Defendant's right to due process was violated and his convictions must be vacated because there was insufficient evidence to support the convictions or grant a new trial because the verdict was against the great weight of the evidence.

VI.   Mr. Russell was denied his rights to due process and a fair trial as a result of the complainant [being] allowed to present false statements and the prosecution['s eliciting false testimony, which prejudiced Mr. Russell.

VII.  Defendant was denied his Fifth and Fourteenth Amendment rights to due process and a fair trial as a result of the complainant's testimony not being corrob[o]rated in order to sustain his conviction.

VIII. Mr. Russell's rights under the Sixth Amendment were violated when the complainant was allowed to leave the trial when the Defense wasn't done confronting the witness.

IX.   The trial court abused [its] discretion when it denied Mr. Russell his right to a speedy trial, depriving Mr. Russell of his due process fundamental right to a fair trial, prohibiting [sic] the right to equal protection under the laws and failing to adjudicate the claims that [were] brought forth to the court,

2

upholding the deprivation of liberties under the United States constitution 5th, 6th, 8th, [and] 14th Amendment[s].

X.     Appell[ate] counsel was ineffective for failing to present and articulate a required defense allowing injustice to be exposed, and failing to challenge defense counsel's "strategy," and the misconduct of the prosecution's exploitation of the given trial testimony, which is a violation of the United States Constitution 5th, 6th, 8th, [and] 14th Amendment[s].

(Pet., ECF No. 1, PageID.11–61.)

Respondent has filed an answer to the petition (ECF No. 19) stating that the grounds should be denied because they are not exhausted, are procedurally defaulted, and are meritless. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), the Court agrees and will deny the petition. The Court will further deny Petitioner's motion to supplement his habeas petition (ECF No. 25), and four motions to supplement or amend Petitioner's reply brief (ECF Nos. 24, 27, 28, 29).

## Discussion

## I.     Factual Allegations and Relevant Procedural History

On April 26, 2018, following a three-day jury trial in the Ingham County Circuit Court, Petitioner was convicted of two counts CSC-I, in violation of Mich. Comp. Laws § 750.520b, one count of unlawful imprisonment, in violation of Mich. Comp. Laws § 750.349b, one count of assault by strangulation, in violation of Mich. Comp. Laws § 750.841b, and one count of domestic violence, third offense, in violation of Mich. Comp. Laws § 750.814. On July 25, 2018, the court sentenced Petitioner as a third-habitual offender, Mich. Comp. Laws § 769.11, to concurrent prison terms of 25 to 50 years for CSC-I, 20 to 30 years for unlawful imprisonment, 13 years, 4 months to 20 years for assault by strangulation, and 6 years, 8 months to 10 years for domestic violence, third offense.

3

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as

follows:

> On March 27, 2017, CR, the victim, moved into the Village Inn Motel with defendant after being introduced to him by her aunt. CR testified concerning the events that took place inside the motel room between March 27, 2017 and April 10, 2017.
>
> CR testified that the first few days were "great," but things changed later that week. CR initially had consensual sexual intercourse with defendant. Later that week, defendant told her that a few of his friends needed to be with her sexually. CR testified that defendant's friends examined her body when they came to the motel room, and that defendant strangled her because she did not want to have sexual intercourse with defendant's friends. CR testified that defendant was on top of her and wrapped his hands around her neck until she could not breathe. When she awoke, she was naked and defendant told her to "get ready," and then two of defendant's friends had sexual intercourse with her while defendant watched. CR testified that defendant choked and beat her if she disobeyed defendant and that he threatened to choke her.
>
> CR testified that defendant and his friend had nonconsensual sex with her. CR told defendant "no" and "stop," and she tried to get up, but defendant pushed her down and told her to "shut up" and "hold still." In another instance, a few of defendant's friends held her down and had vaginal, anal, and oral sex with her. CR tried to fight off the men; however, defendant rubbed a gun down the side of her face and told her to be a "big girl" and to do what the men wanted. CR testified that her right shoulder was injured as a result of being held down.
>
> CR testified that defendant had nonconsensual vaginal and anal sex with her on approximately April 8, 2017. CR told defendant that she wanted to go home and that she did not want to be in a relationship with him. In response, defendant shoved, pushed, and choked CR. CR thought defendant would have killed her if she fought back and that defendant told her that the only way she was going to leave was in a body bag.
>
> CR's sister, LV, testified that CR was scared and not safe at the motel, and that CR sent her a message that indicated CR was not safe. CR's other sister, JR, testified that CR appeared to be afraid and depressed while living in the motel, which led JR to call the police.
>
> Ingham County Sheriff Deputy William Lo contacted and interviewed CR on April 10, 2017. CR was terrified and crying, and gave Deputy Lo her account of the events that took place at the hotel during the interview. Deputy Lo noted that CR's

4

timing was "off"; however, he testified that it was not uncommon for a victim like CR to lose their frame of reference.

CR was examined by a SANE nurse, who observed that CR had bruising to her neck, back, and chest, an abrasion on her chest and abdomen, and an injury and bruise on her left leg. CR also had a laceration with bruising in her anal area. The nurse collected DNA evidence during the examination. The DNA evidence was analyzed and there was very strong support that defendant contributed to the DNA found on the vaginal, anal, and neck swabs collected from CR. An expert in strangulation and forensic nursing testified that CR's symptoms and injuries were consistent with strangulation.

Defendant testified that he and CR engaged in consensual sex and that they did not have sex with other men. He testified that some of his friends stopped by the motel to take him to work, but that they did not have sex with CR. Defendant denied being violent and strangling CR or being aggressive toward her. Defendant testified that he did not see any injuries on CR when he left for work on April 10, 2017; however, he admitted that CR had one "passion mark" on the back of her neck from him. Regarding CR's bruises and marks on her back, defendant testified that they were "passion marks" and that he had never hit CR.

*People v. Russell*, No. 344890, 2020 WL 4236382, at *1–2 (Mich. Ct. App. Jul. 23, 2020) ("*Russell I*").

On January 25, 2019, Petitioner filed a *pro per* motion for a new trial and motion for an evidentiary hearing. (Mot. New Trial, ECF No. 20-31, PageID.1228–1239.) Thereafter, on February 26, 2019, Petitioner, through his appointed counsel, filed a second motion for a new trial (Mot. New Trial 2d., ECF No. 20-30, PageID.1137–46.) The trial court denied Petitioner's requests on March 27, 2019 (Mar. 27, 2019, Ord., ECF No. 20-30, PageID.1152.)

Petitioner appealed his convictions to the Michigan Court of Appeals, raising the following arguments on appeal:

I.     The Defendant's conviction for unlawful imprisonment must be vacated where the prosecution failed to present sufficient evidence to sustain a guilty verdict or alternatively Defendant is entitled to a new trial because the verdict was against the great weight of the evidence.

II.    Defendant's convictions must be vacated where his trial counsel did not provide effective assistance of counsel as required by the Sixth and 14th amendments to the United States Constitution when he failed to call witnesses to corroborate Defendants anticipated testimony or to impeach the complainant['s] testimony.

III.    Defendant was denied effective assistance of counsel as guaranteed by the Sixth and 14th amendments when his trial counsel did not impeach the complaining witness with prior sworn testimony where the credibility of the witness was critical to the outcome of the trial.

IV.    Defendant was denied effective assistance of counsel as guaranteed by the Sixth and 14th Amendments when his trial counsel did not obtain evidence from Defendant's cell phone which was seized and copied by the police and the phone contained photographs and texts that would have undermined the testimony of complainant.

V.    Defendant's right to due process was violated and his convictions must be vacated because there was insufficient evidence to support the convictions or grant the new trial because the verdict was against the great weight of the evidence.

(App. Br., ECF No. 20-30, PageID.1191, 1197, 1200, 1203, 1206.)

Petitioner filed a *pro per* Standard 4 brief, raising the following issues:

I.    Was testimony of the complainant and witnesses false and perjury committed by the prosecution in eliciting testimony?

II.    Knowledge of previous testimony of the complainant that would have contradicted her testimony at trial. Opening to credibility.

III.    The prosecution violated the defendant's right under the Sixth Amendment to confront witnesses.

(Std. 4 Br., ECF No. 20-29, PageID.1021, 1023, 1026.)

Petitioner also filed a motion for leave to file a *pro per* supplemental brief, raising the argument of prosecutorial misconduct. (Suppl. Std. 4 Br., ECF No. 20-29, PageID.993–95, 997.) However, the court of appeals denied Petitioner's motion for leave on June 19, 2020. (Jun. 19, 2020, Ord., ECF No. 20-29, PageID.992.)

By way of an unpublished opinion issued July 23, 2020, the Michigan Court of Appeals affirmed Petitioner's conviction. *Russell I*, at *1. That court also denied Petitioner's motion for reconsideration by order entered August 26, 2020.

Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court, raising the same issues presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave initially by order entered March 2, 2021, *People v. Russell*, 954 N.W.2d 826 (Mich. 2021), and upon reconsideration by order entered April 27, 2021, *People v. Russell*, 957 N.W.2d 773 (Mich. 2021).

On July 12, 2021, Petitioner returned to the trial court to file a motion for relief from judgment pursuant to Michigan Court Rule 6.500. (Mot. Relief Jud., ECF No. 20-25.) In his motion, under "Issues 1-2," "Mr. Russell argues that defense counsel's failure to introduce documents that contradicted the complainant's trial testimony amounted to ineffective assistance of counsel and was sufficient for a new trial." (*Id.*, PageID.837.) As evidence, Petitioner relied upon "Incident Report 17-02142," text messages, a medical report, Petitioner's work schedule, and a police report (*id.*, PageID.837–47.) Petitioner also claimed that the prosecution elicited "false testimony" by not introducing complete text messages or phone records from Petitioner's phone and by introducing contradictory testimony from CR. (*Id.*, PageID.856–58.) Finally, Petitioner argued that appellate counsel was ineffective "because he failed to obtain discovery material[] detrimental to arguing the credibility of the witness . . ." (*Id.*, PageID.861.) The trial court denied Petitioner's motion for relief from judgment on December 23, 2021. (Dec. 23, 2021, Ord., ECF No. 20-28, PageID.891–96.)

Petitioner sought leave to appeal to the Michigan Court of Appeals. However, the Michigan court of appeals denied Petitioner's request "because defendant has failed to establish that the trial court erred in denying the motion for relief from judgment." (Nov. 20, 2022, Ord., ECF No. 20-36, PageID.1807.) The Michigan Supreme Court denied Petitioner's application for leave to appeal because Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Russell*, 986 N.W.2d 9007 (Mich. 2023) (unpublished table decision). And, by order entered on May 30, 2023, the Michigan Supreme Court also denied Petitioner's motion for reconsideration. *People v. Russell*, 990 N.W.2d 339 (Mich. 2023) (unpublished table decision). Petitioner then filed this application for habeas relief.

Following the filing of his habeas petition, Petitioner filed a motion requesting an evidentiary hearing and for the appointment of counsel (ECF No. 13), and a motion seeking to amend his habeas petition to add additional argument and authority to support his petition (ECF No. 17). The Court denied Petitioner's motion for an evidentiary hearing without prejudice pending plenary review of this case, denied Petitioner's request for appointment of counsel, and denied Petitioner's request to amend his habeas petition. (ECF No. 18.)

On March 25, 2024, Respondent filed an answer to the Petition (ECF No. 19), as well as the state court record (ECF No. 20). Petitioner filed a "traverse to response to order to show cause" (ECF No. 23), which the Court will construe as a response brief. With his response, Petitioner filed a motion to supplement. (ECF No. 24). Shortly thereafter, Petitioner filed a second motion to supplement his petition regarding his claims that CR committed perjury. (ECF No. 25.) Petitioner submitted additional motions to supplement or amend his reply brief on April 17, 2024 (ECF No. 27), May 15, 2024 (ECF No. 28), and June 24, 2024 (ECF No. 29).

8

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in

light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate

courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## A.     Exhaustion of State Court Remedies

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *O'Sullivan*, 526 U.S. at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275–77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459

U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen v. Perini*, 424 F.2d 134, 138–39 (6th Cir. 1970). Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

### B.    Procedural Default

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).

To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether (1) the petitioner failed to comply with an applicable state procedural rule, (2) the state court enforced the rule so as to bar the claim, and (3) the state procedural default is an "adequate and independent" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004), *abrogated on other grounds by Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc); *accord Lancaster*, 324 F.3d at 436–37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette*, 624 F.3d at 291.

12

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 53 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551–52. The miscarriage-of-justice exception can only be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new, reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

## III.   Discussion

### A.   Claims Regarding Sufficiency of the Evidence – Grounds I, V, and VII

In grounds I, V, and VII, Petitioner contends that his constitutional rights were violated because there was insufficient evidence to find him guilty of the charged crimes.

#### 1.   Procedural Default

Respondent contends that Petitioner procedurally defaulted his claims that there was insufficient evidence to find him guilty of CSC-I, assault by strangulation, and domestic violence. As described above, procedural default may occur where a state prisoner attempts to raise a federal constitutional claim in state court, but the state court previously refused to consider the claim because the claim was not properly raised under the state's procedural rules. *See, e.g.*, *Murray v. Carrier*, 477 U.S. 478 (1986).

In analyzing Petitioner's claims on direct appeal, the Michigan Court of Appeals explained:

> As an initial matter, defendant has abandoned his challenges to the sufficiency of the evidence regarding his convictions of CSC-I, assault by strangulation, and domestic violence. In defendant's brief on appeal, he merely cites evidence that refutes that defendant was away from the motel room for large amounts of time, that CR left the motel room at times, that CR was able to communicate with her sisters, and that CR provided an inconsistent timeframe. Defendant does nothing to argue how there was insufficient evidence to sustain his convictions, or how his convictions were against the great weight of the evidence. "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v. Harris*, 261 Mich. App. 44, 50; 680 N.W.2d 17 (2004). We thus decline to address defendant's argument relating to his convictions of CSC-I, assault by strangulation, and domestic violence.

*Russell I*, at *3. When a state-law default such as this prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst,* 501 U.S. at 801; *Engle,* 456 U.S. at 107.

However, the Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones,* 351 F.3d 212, 216 (6th Cir.2003) (citing *Lambrix v. Singletary,* 520 U.S. 518, 525 (1997) ( "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson,* 127 F.3d 409, 423–24 (5th Cir.1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Because Petitioner's application for writ of habeas corpus may be easily denied on the merits, the Court will address the merits of Petitioner's claims regarding the sufficiency of the evidence notwithstanding Petitioner's procedural default.

### 2.   Petitioners claims of insufficient evidence fail on the merits.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims: the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

> [T]he sufficiency of the evidence review authorized by *Jackson* is limited to "record evidence." 443 U.S., at 318. *Jackson* does not extend to nonrecord evidence, including newly discovered evidence. Finally, the *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.

*Herrera v.* Collins, 506 U.S. 390, 402 (1993).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "a nearly insurmountable

15

hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Petitioner contends that several pieces of evidence demonstrate that CR was not sexually assaulted on the days and/or times that she reported or that CR's statements regarding dates and times were inconsistent. (Pet., ECF No. 1, PageID.13–16.) Petitioner also contends that the SANE nurse testified that the marks that the nurse felt were consistent with strangulation marks "could be hickies." (*Id.*, PageID.35.)

The Michigan Court of Appeals applied the following standard to resolve Petitioner's sufficiency challenge with respect to Petitioner's convictions for unlawful imprisonment:

> When determining whether the prosecutor presented sufficient evidence to sustain a conviction, this Court must view the evidence "in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v. Reese*, 491 Mich. 127, 139; 815 N.W.2d 85 (2012) (quotation marks and citation omitted)

*Russell I*, at *2. Although the court of appeals cited state authority as the source of the standard, the standard cited is functionally equivalent to the *Jackson* standard.

The state court's application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

16

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not

"contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our
> cases to the facts of a prisoner's case would not fit comfortably within
> § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court
> decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland*
> [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and,
> applying that framework, rejects the prisoner's claim. Quite clearly, the state-court
> decision would be in accord with our decision in *Strickland* as to the legal
> prerequisites for establishing an ineffective-assistance claim, even assuming the
> federal court considering the prisoner's habeas application might reach a different
> result applying the *Strickland* framework itself. It is difficult, however, to describe
> such a run-of-the-mill state-court decision as "diametrically different" from,
> "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our
> clearly established precedent. Although the state-court decision may be contrary to
> the federal court's conception of how *Strickland* ought to be applied in that
> particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Because the Michigan Court of Appeals applied the correct standard, Petitioner can

only overcome the deference afforded state court decisions if the court of appeals' conclusion

regarding the sufficiency of the evidence is an unreasonable application of *Jackson* or if the state

court's resolution was based on an unreasonable determination of the facts. 28 U.S.C. 2254(d).

The Michigan Court of Appeals addressed Petitioner's claim regarding insufficient

evidence to support his conviction for unlawful imprisonment as follows:

> Defendant argues that the prosecution presented insufficient evidence for the jury
> to find that CR had been restrained and convict him of unlawful imprisonment. To
> convict a defendant of unlawful imprisonment, the prosecutor must prove beyond
> a reasonable doubt that the defendant knowingly restrained another person to
> facilitate the commission of another felony or to facilitate flight after commission
> of another felony. MCL 750.349b(1)(c). "Restrain" means "to forcibly restrict a
> person's movements or to forcibly confine the person so as to interfere with that
> person's liberty without that person's consent or without lawful authority." MCL
> 750.349b(3)(a). "The restraint does not have to exist for any particular length of
> time and may be related or incidental to the commission of other criminal acts." *Id.*
> It is for the fact-finder alone "to determine what inferences may be fairly drawn
> from the evidence and to determine the weight to be accorded those inferences."

*Oros*, 502 Mich. at 239 (quotation marks and citation omitted). This Court must consider all reasonable inferences that can be fairly drawn from the evidence when considering the sufficiency of the evidence. *Id.*

We conclude that there was sufficient evidence to permit a rational trier of fact to find that defendant committed unlawful imprisonment. CR testified that defendant strangled her and was on top of her, and that she was unable to move when she attempted to do so. CR also testified that she tried to get up when defendant and another man had nonconsensual sex with her, but defendant pushed her back down, and that defendant told her "to shut up, too bad" and to "hold still." CR also testified that she was physically held down while men were having nonconsensual sex with her and that defendant rubbed a gun down the side of her face and told her to do what the men wanted. Further, CR testified that defendant shoved, pushed, and choked her on approximately April 8, 2017, after she told him that she wanted to go home and that she did not want to be in a relationship with him, and that he forced her to have sexual intercourse.

Although CR testified that she was not sure if defendant was one of the men who physically held her down during the encounter with multiple men, a reasonable juror could have reasonably inferred that he did. A reasonable juror could have also concluded that defendant forcibly restrained her with the gun. Additionally, a reasonable juror could have concluded that defendant forcibly restrained CR to facilitate the commission of CSC-I, assault by strangulation, or domestic violence. Thus, there was sufficient evidence for the jury to find beyond a reasonable doubt that defendant unlawfully imprisoned CR.

*Russell I*, at *3–4.

In his § 2254 petition, Petitioner essentially reiterates the arguments that he raised in—and that were rejected by—the court of appeals. To prevail on his sufficiency claim now, Petitioner must show that the supporting evidence and inferences identified by the appellate court are unreasonable. In *Coleman v. Johnson*, 566 U.S. 650, 655 (2012), the Supreme Court provided some guidance with respect to the distinction between a reasonable inference and mere speculation. Based on the Court's analysis, a reasonable inference is an inference that a rational factfinder could make from the facts. That is hardly an earth-shattering revelation, and it is not a particularly onerous burden. The Court went so far as to say, "the only question under *Jackson* is

whether [a] finding is so insupportable as to fall below the threshold of bare rationality." *Id.* at 656.

Petitioner has offered nothing from which this Court could conclude that the court of appeals' inferences were irrational. Certainly, one could interpret the underlying events differently and reach different conclusions—as Petitioner asks this Court to do—but that does not render the court of appeals' factual determinations and inferences irrational. Petitioner, therefore, has failed to meet his burden as to his claim of insufficient evidence to support his conviction for unlawful imprisonment.

Though not specifically addressed by the court of appeals, this same set of facts and inferences observed by the court of appeals also supports Petitioner's convictions for CSC-I, assault by strangulation, and domestic violence.

In a situation such as this, the *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. Here, when CSC-I is charged pursuant to MCL 750.520b(1)(f), the prosecution must prove three elements: (1) the defendant caused personal injury to the victim; (2) the defendant engaged in sexual penetration with the victim; and (3) the sexual penetration was accomplished by use of force or coercion. *People v Nickens*, 470 Mich 622, 629; 685 NW2d 657 (2004). "Sexual penetration" is defined, in relevant part, as including "any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body." MCL 750.520a(r).

The crime of assault by strangulation under Michigan law occurs when one "[a]ssaults another person by strangulation or suffocation." MCL 750.84(1)(b). "Strangulation or suffocation"

is defined as "intentionally impeding normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person." MCL 750.84(2).

> Finally, a person commits domestic violence in violation of Michigan law if the person
>
> assaults or assaults and batters his or her spouse or former spouse, an individual with whom he or she has or has had a dating relationship, an individual with whom he or she has had a child in common, or a resident or former resident of his or her household . . .

Mich. Comp. Laws § 750.81(2). A defendant commits an assault when there is "an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v. Meissner,* 294 Mich. App. 438, 453–454; 812 N.W.2d 37 (2011) (citation and quotation marks omitted). A battery is "an intentional, unconsented and harmful or offensive touching of the person of another . . ." *Id.* at 454 (citation and quotation marks omitted)

It is not possible for this Court to conclude that, viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the elements of the foregoing crimes satisfied beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. Here, the court of appeals explained that CR testified that Petitioner, with whom she was in a dating relationship, had nonconsensual vaginal and anal sex with her, beat her, and strangled and choked her. *Russell I*, at *1–2. Petitioner's argument that that CR's testimony was not corroborated by other witnesses or by physical evidence is both factually untrue and legally insufficient. First, as the court of appeals observed, "CR was examined by a SANE nurse, who observed that CR had bruising to her neck, back, and chest, an abrasion on her chest and abdomen, and an injury and bruise on her left leg. CR also had a laceration with bruising in her anal area" consistent with CR's description of the events. *Russell I*, at *1–2.

20

But second and more importantly, "[a] jury's verdict 'may be based entirely on circumstantial evidence.'" *Dixon v. Miller,* 293 F.3d 74, 81 (2d Cir.2002) (quoting *United States v. Martinez,* 54 F.3d 1040, 1043 (2d Cir.1995)); *see also United States v. Spearman,* 186 F.3d 743, 746 (6th Cir.1999) ("'Circumstantial evidence alone is sufficient to sustain a conviction. . .") (quoting *United States v. Vannerson,* 786 F.2d 221, 225 (6th Cir.1986)); *United States v. Jones,* 102 F.3d 804, 807 (6th Cir.1996) (noting that there is sufficient evidence to support a conviction even if the "circumstantial evidence does not 'remove every reasonable hypothesis except that of guilt' ") (quoting *United States v. Clark,* 928 F.2d 733, 736 (6th Cir.1991) (per curiam)). CR's testimony was sufficient to establish each element of the charges against Petitioner. *See, e.g., United States v. Howard,* 218 F.3d 556, 565 (6th Cir. 2000) (stating that "the testimony of a rape victim alone is sufficient to support a defendant's conviction").

Notably, "[t]he facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016). Petitioner can overcome that presumption with clear and convincing evidence; he has not. He does not offer any evidence to show that the court of appeals' identification of supporting evidence and inferences is unreasonable on the record. Instead, Petitioner's arguments invite this Court to reweigh the witnesses'—and particularly CR's—credibility and resolve all conflicts and make all inferences in his favor. Under *Jackson*, a habeas court is not required to sift through the evidence and place it on one side of the scale or the other for the purpose of assessing whether the jurors' estimation of the balance is correct. Rather, the Court is only required to look at the evidence in a light that favors the prosecution and assess whether a rational factfinder could conclude that Petitioner is guilty beyond a reasonable doubt considering that evidence. It is up to

21

the jury to decide issues of credibility, to decide between conflicting accounts, and draw inferences, so long as the inferences are reasonable. *See Herrera*, 506 U.S. at 401–02; *Martin*, 280 F.3d at 618. Petitioner's invitation turns the *Jackson* standard on its head.

Petitioner has failed to show that the Michigan Court of Appeals' rejection of Petitioner's sufficiency claims is an unreasonable application of *Jackson* or that the rejection relied on an unreasonable determination of the facts. According, Petitioner is not entitled to relief on his insufficiency of the evidence claims in habeas grounds I, V, and VII.

### B.    Claim Regarding *Brady* Violation – Ground I

In addition to arguing that the prosecution failed to present sufficient evidence to sustain a guilty verdict, Petitioner also contends in ground I that the prosecution "failed to disclose the vital evidence crippling the defense. . . ." (Pet., ECF No. 1, PageID.12.) In his reply, however, Petitioner clarifies that he does not claim that information was not disclosed to defense counsel. Instead, Petitioner argues that "if" defense counsel was aware of the evidence, but failed to introduce it, then defense counsel's performance was deficient. (Reply, ECF No. 23, PageID.3255.) Petitioner likens the failure to *introduce* what Petitioner believes to be exculpatory evidence to a failure to disclosure exculpatory evidence in violation of the rule set forth in *Brady v. Maryland*, 373 U.S. 83 (1963). (Reply, ECF No. 23, PageID.3255.) Petitioner's arguments demonstrate a fundamental misunderstanding of the rule set forth in *Brady* and do not demonstrate any grounds for relief.

Under *Brady*, "suppression by the prosecution of evidence favorable to an accused. . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The Supreme Court has held that "[t]here are three components of a true *Brady* violation: [t]he evidence at issue must be

favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence

must have been suppressed by the State, either willfully or inadvertently; and prejudice must have

ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Prejudice (and materiality) is

established by showing that "there is a reasonable probability that, had the evidence been disclosed

to the defense, the result of the proceeding would have been different." *Id.* at 280 (quoting *United

States v. Bagley*, 473 U.S. 667, 682 (1985)); *see also Cone v. Bell*, 556 U.S. 449, 469–70 (2009).

However, *Brady* does not require that any party introduce evidence at trial. And the *Brady*

rule "only applies to evidence that was known to the prosecution, but unknown to the defense at

the time of trial." *Apanovitch v. Houk*, 466 F.3d 460, 474 (6th Cir. 2006). The government's failure

to disclose potentially exculpatory evidence does not violate *Brady* "'where the defendant knew

or should have known the essential facts that would permit him to take advantage of such

information' or where the evidence is available from another source." *United States v. Clark*, 928

F.2d 733, 738 (6th Cir. 1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988)).

"[W]here the alleged *Brady* evidence is available to the defense, 'there is really nothing for the

government to disclose.'" *Abdur'Rahman v. Colson*, 649 F.3d 468, 474 (6th Cir. 2011) (quoting

*Bell v. Bell*, 512 F.3d 223, 235 (6th Cir. 2008)).

Here, Petitioner does not point to any evidence that was unknown or unavailable to the

defense at the time of trial. Therefore, he cannot state any violation of the rule set forth in *Brady*,

and has not shown any basis for relief.

### C.     Claims Regarding Ineffective Assistance of Counsel – Ground II, III, IV, and X

Petitioner raises several claims of ineffective of counsel in grounds II, III, IV, and X. In

*Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test

by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the petitioner resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The *Strickland* standard that applies to trial counsel also applies to appellate counsel. However, a criminal appellant has no constitutional right to have every non-frivolous issue raised on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme

24

Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d). In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA. . ." (citing *Harrington*, 562 U.S. at 102)).

Petitioner raised some of his ineffective assistance claims on direct appeal and others in his Rule 6.500 motion. On direct appeal, the court of appeals analyzed Petitioner's claims under the following standard:

> Whether a defendant has been deprived of effective assistance of counsel is "a mixed question of law and fact[.]" *People v. Trakhtenberg*, 493 Mich. 38, 47; 826 N.W.2d 136 (2012). "A judge first must find the facts, and then must decide

25

whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v. LeBlanc*, 465 Mich. 575, 579; 640 N.W.2d 246 (2002). We review the trial court's factual findings for clear error, while questions of constitutional law are reviewed de novo. *Id.*

Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. A defendant must also show that the result that did occur was fundamentally unfair or unreliable. [*People v. Lockett*, 295 Mich. App. 165, 187; 814 N.W.2d 295 (2012) (citations omitted).]

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." [*Strickland*, 466 U.S. at 694.]

*Russell I*, at *4–5. Although the court of appeals cited state authority in addition to its reliance on *Strickland*, the standard is identical to that set forth in *Strickland*. Moreover, *LeBlanc* identifies *Strickland* as the source of the standard. *LeBlanc*, 465 Mich. at 583.

In its opinion denying Petitioner's Rule 6.500 motion, the trial court also set forth a standard for evaluating Petitioner's claims of ineffective assistance functionally equivalent to *Strickland*:

"To obtain relief with regard to an ineffective assistance of counsel claim, a defendant must show that counsel performed below an objectively reasonable standard and that that performance prejudiced the defendant." *People v Cline,* 276 Mich App 634, 637; 741 NW2d 563 (2007). "The test for ineffective assistance of appellate counsel is the same as that for trial counsel." *People v Pratt,* 254 Mich App 425,430; 656NW2d 866 (2002) "In evaluating whether counsel was ineffective, judicial scrutiny of counsel's performance must be highly deferential, and the court should restrain from second-guessing trial strategy." *People v Reed,* 449 Mich 375,384; 535 NW2d 496, 501 (1995).

(Dec. 23, 2021, Ord., ECF No. 20-28, PageID.895.)

The standards as set forth by the state courts leave no question that the state courts applied the correct standard. Petitioner, therefore, can only overcome the deference afforded to state court

26

decisions if the state courts' determinations were based on an unreasonable application of *Strickland* or if the state courts' resolutions were based on unreasonable determinations of the facts. 28 U.S.C. 2254(d).

### 1.   Failure to Call Witnesses for Corroboration or Impeachment – Grounds II and III

Petitioner contends that defense counsel was ineffective because defense counsel failed to call witnesses to "corroborate defendant's anticipated testimony or to impeach complainant's testimony." (Pet., ECF No. 1, PageID.21.) Petitioner identified Anthony Lee Palmer and Jason Robert-Rashawn—men that CR testified had sexually assaulted her—as well as Sonny Patel, the hotel manager. (*Id.*, PageID.21–22.)

Petitioner also contends that defense counsel was ineffective for not impeaching CR on her statements that Petitioner was the first person that CR dated outside of her race (*id.*, PageID.26), or introduce evidence that, on April 6, 2017, CR once texted Petitioner that "she was in love and couldn't wait for him to get home" (*id.*, PageID.27), that CR did not tell the SANE Nurse that guns were used on her (*id.*), that she made inconsistent statements about the dates of the sexual assaults, whether the other men wore condoms (*id.*, PageID.28), whether CR was in contact with her children, and whether she was permitted to wear underwear (*id.*, PageID.29).

In assessing this claim, the Court of Appeals explained:

Defendant first argues that he was denied effective assistance of counsel because defense counsel failed to call other witnesses to testify at trial. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy," *People v. Rockey*, 237 Mich. App. 74, 76; 601 N.W.2d 887 (1999), "which we will not second-guess with the benefit of hindsight," *People v. Dixon*, 263 Mich. App. 393, 398; 688 N.W.2d 308 (2004). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *Id.* "A substantial defense is one that could have affected the outcome of the trial." *People v. Putman*, 309 Mich. App. 240,

248; 870 N.W.2d 593 (2015). A defendant's ineffective-assistance-of-counsel claim based on the failure to investigate or call witnesses will fail when the defendant does not produce affidavits describing testimony that would have been elicited from those witnesses or show how the proposed testimony would have benefited the defense. See *People v. Davis*, 250 Mich. App. 357, 369; 649 N.W.2d 94 (2002).

Defendant's argument has no merit because defense counsel's theory of the case was that defendant did not commit the acts alleged by the victim, which was supported by defendant's trial testimony. Defendant does not articulate the defenses that trial counsel failed to present or how he was prejudiced by defense counsel's failure to raise those defenses. Further, defendant did not provide affidavits indicating what the other witnesses would have testified or how that testimony would have benefited his defense.

*   *   *

Finally, defendant argues that he was denied effective assistance of counsel because defense counsel failed to impeach CR with her prior testimony. However, the record establishes that defense counsel impeached CR numerous times regarding inconsistencies with statements she made during the preliminary examination and to police. Although trial counsel may not have highlighted every aspect in which the trial testimony of CR was inconsistent with her previous statements, failure to impeach a witness on all contradictory aspects of his or her statements is a matter of trial strategy and does not necessarily constitute ineffective assistance of counsel. *People v. McFadden*, 159 Mich. App. 796, 800; 407 N.W.2d 78 (1987).

Further, even assuming that defense counsel improperly failed to further impeach CR with her testimony from the preliminary examination, defendant has not shown the existence of a reasonable probability that, but for this error, the result of the proceeding would have been different. There was substantial evidence against defendant. CR testified concerning her account of the events. Additionally, several other witnesses provided testimony that supported CR's account of the events. Defendant has failed to show that defense counsel's performance was below an objective standard of reasonableness under prevailing professional norms or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceedings would have been different.

*Russell I*, at *5–6.

This Court cannot conclude that there is no "reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Jackson*, 687 F.3d at 740–41. Under federal law, "[d]ecisions

28

as to whether to call certain witnesses or what evidence to present are presumed to be matters of trial strategy, and the failure to call witnesses or present evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense." *Collins v. Berghuis*, No. 1:08-cv-369, 2011 WL 4346333, at *16 (W.D. Mich. Aug. 22, 2011) (citing *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002)).

As discussed above, the Michigan Court of Appeals rejected Petitioner's argument that trial counsel should have called additional witnesses because Petitioner failed to produce affidavits from any additional witnesses detailing their proffered testimony. As the Sixth Circuit also recently reaffirmed that a claim of "ineffective assistance for failing to call witnesses cannot be based on mere speculation;" affidavits are required to establish the content of the missing testimony. *Hinds v. Davids*, No. 23-1418, 2023 WL 11284827, at *3 (6th Cir. Dec. 14, 2023) (citing *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007); *Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005)). Here, too, Petitioner has not presented any affidavits from the proposed witnesses to support his claim that he was deprived of a substantial defense.[1] Therefore, Petitioner has not demonstrated that trial counsel's failure to call Anthony Lee Palmer, Jason Robert-Rashawn, and Sonny Patel as additional witnesses deprived Petitioner of a "substantial defense."

Moreover, the record belies Petitioner's claims that trial counsel failed to impeach CR on the topics cited in Petitioner's application for habeas relief. As the court of appeals observed, trial

---

[1] This Court may not now entertain any affidavits from such witnesses. The United States Supreme Court has held that habeas review under 28 U.S.C. § 2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

29

counsel did in fact engage in an extensive cross examination of CR. The trial transcript reveals that defense counsel cross examined and impeached CR with prior inconsistent statements to police, CR's description of the early portion of her relationship with Petitioner as "magical" and involving "consensual sex," CR's description of Petitioner as "gentlemanly," "kind and loving," and "caring," CR's lack of a relationship with her children, CR's prior inconsistent statements regarding dates of the assaults and her descriptions of the events involving Petitioner and other men, her inconsistent statements regarding the use of condoms, and her prior statements regarding the use of guns. (Apr. 19, 2018, Tr., ECF No. 20-14, PageID.660–68). The fact that counsel's efforts to impeach CR with her prior statements were ultimately unsuccessful does not mean that counsel's efforts were professionally unreasonable.

The court of appeals concluded that counsel's decision not to call certain witnesses, and counsel's performance during his cross-examination of CR did not constitute ineffective assistance of counsel. *Russell I*, at *5–6. Because Petitioner has not demonstrated that the court of appeals' rejection of Petitioner's assertion of ineffective assistance of counsel is an unreasonable application of, *Strickland*, or based upon an unreasonable determination of the facts, Petitioner is not entitled to federal habeas relief with respect to this claim.

### 2.     Failure to Introduce Cell Phone Evidence – Ground IV

Petitioner argues that defense counsel was ineffective in failing to introduce evidence from Petitioner's cell phone that Petitioner contends demonstrates that Petitioner and CR were having consensual sex on March 31, 2017, and that CR was in love with Petitioner. (Pet., ECF No. 1, PageID.32–33.)

In assessing this claim on direct appeal, the court of appeals explained:

30

> Defendant has not established that defense counsel's performance was below an objective standard of reasonableness under prevailing professional norms. Defendant asserts, without providing this Court with any evidence, that his cellular telephone contained exculpatory information. Further, defendant has failed to establish that, but for defense counsel's alleged error, the result of the proceedings would have been different because defendant does not identify what exculpatory information his cellular telephone allegedly contained and how it would have benefited his defense.

*Russell I*, at *6.

This court "may not consider additional evidence not presented to the state courts on this claim." *Moore v. Mitchell*, 708 F.3d 760, 784 (6th Cir. 2013). Based upon the information and evidence presented to the state courts, this Court cannot say that the state court's determination was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Even if this Court could consider the evidence presented by Petitioner, Petitioner has not carried his burden of demonstrating prejudice. The court of appeals observed that even "CR testified that the first few days were 'great.'" *Russell I*, at *1. Moreover, defense counsel elicited testimony from CR on cross-examination that CR loved Petitioner, that they had consensual sex during the early stage of their relationship, and that CR described the beginning of her relationship with Petitioner as "magical." (Apr. 19, 2018, Tr., ECF No. 20-14, PageID.660–68). This is consistent with the evidence that Petitioner alleges was contained on his cell phone. The cell phone evidence, therefore, would have been cumulative.

In *Wong v. Belmontes*, 558 U.S. 15 (2009), the Supreme Court concluded that adding cumulative evidence to what was already there "would have made little difference" such that Belmontes could not "establish *Strickland* prejudice." *Wong*, 558 U.S. at 22. More recently, the

31

Sixth Circuit assessed whether the introduction of cumulative evidence could be considered prejudicial in *England v. Hart*, 970 F.3d 698 (6th Cir. 2020), stating:

> Next, England argues that the affidavit was corroborative, rather than cumulative, of the aspects of the Woodfork statements that the prosecution relied on. "[E]vidence that is merely cumulative of that already presented does not . . . establish prejudice." *Getsy v. Mitchell*, 495 F.3d 295, 313 (6th Cir. 2007) (en banc) (quoting *Broom v. Mitchell*, 441 F.3d 392, 410 (6th Cir. 2006)). Determining what constitutes cumulative evidence can be difficult, as "[o]ur cases . . . do not tell us clearly when evidence becomes sufficiently different to no longer be 'cumulative' or at what level of generality one must compare the evidence." *Vasquez v. Bradshaw*, 345 F. App'x 104, 120 (6th Cir. 2009). Our most frequent formulation of the standard is that "new evidence" is not cumulative if it "differs both in strength and subject matter from the evidence actually presented at [trial]." *Goodwin v. Johnson*, 632 F.3d 301, 327 (6th Cir. 2011).

*England*, 970 F.3d at 714–15.[2] Under the *England* standard, the cell phone evidence identified by Petitioner would have been cumulative to the victim's testimony. Petitioner offers no facts to suggest that the cell phone evidence differed materially in "strength" or "subject matter" from the

---

[2] The Sixth Circuit has found this reasoning persuasive in multiple cases. *See, i.e., Barnes v. Warden, Ross Corr. Inst.,* No. 19-3389, 2019 WL 5576345, at *2 (6th Cir. Sept. 16, 2019) ("Review of the record confirms that Andrews's testimony—whether hearsay or not—was cumulative to Martin's own testimony about the incident. Even assuming the testimony did amount to hearsay, Barnes cannot make a substantial showing that counsel's failure to object resulted in prejudice."); *Dobbs v. Trierweiler,* No. 16-2209, 2017 WL 3725349, at *2 (6th Cir. Apr. 7, 2017) ("[T]he testimony as cumulative with regard to the second shooting . . . [a]nd because the testimony was harmless, Dobbs could not show that his attorney's failure to object to it was objectively unreasonable or that prejudice resulted."); *Thurmond v. Carlton*, 489 F. App'x 834, 842 (6th Cir. 2012) ("Because Baxter's [hearsay] testimony was cumulative to the victim's, the lack of an objection (likely to be sustained) did not prejudice the defense."); *Anthony v. DeWitt*, 295 F.3d 554, 564 (6th Cir. 2002) ("[A]dmission [of the hearsay statements] would constitute harmless error because of our conclusion that they did not have a substantial and injurious effect or influence in determining the jury's verdict. . . . Prior to Regina Knox's testimony, there was sufficient corroborating testimony from John Knox and Mary Payne describing the events on the evening of Smith's murder, making Regina Knox's hearsay testimony in this regard cumulative. . . . [H]abeas petitioners are not entitled to relief based on trial error unless they can establish that the error resulted in actual prejudice . . . .").

victim's trial testimony. Therefore, Petitioner has failed to show that the state appellate court's resolution of this claim is an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts. Therefore, he is not entitled to habeas relief on this claim.

### 3.      Failure to Raise Arguments on Appeal – Ground X

In ground X, Petitioner claims that appellate counsel should have requested an adjournment at the hearing on Petitioner's motion for a new trial and motion for an evidentiary hearing in order to obtain additional evidence and engage in further investigation. (Pet., ECF No. 1, PageID.58.) Petitioner did not raise these arguments in his motion for relief from judgment before the trial court or on appeal. (ECF No. 20-25, PageID.861–864.)

In order to fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan,* 513 U.S. at 365–66; *Wagner v. Smith,* 581 F.3d 410, 414 (6th Cir.2009); *Hafley,* 902 F.2d at 483. "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 845.

Since Petitioner did not raise these arguments in his motion for relief from judgment or in his application for leave to appeal that motion to the Michigan Court of Appeals, his claim of ineffective assistance of appellate counsel based upon the foregoing arguments is unexhausted. Generally, a prisoner may file only one motion for relief from judgment, Mich. Ct. R. 6.508(D), and exceptions to this rule exist only for motions based on a retroactive change in the law or on a claim of newly discovered evidence. *See* Mich. Ct. R. 6.502(G)(2). Petitioner has already filed one

33

motion for relief from judgment. Moreover, his claims of ineffective assistance of appellate counsel are not based on a retroactive change in the law or on newly discovered evidence. Consequently, his claims do not fall within either of the exceptions to Mich. Ct. R. 6.502(G)(2), and he no longer has a state remedy to exhaust. His unexhausted claims therefore are procedurally defaulted. Thus, appellate counsel cannot be deemed "cause" for Petitioner's procedural default, *Edwards,* 529 U.S. at 450–53, and the Court need not determine whether Petitioner was prejudiced by the alleged constitutional errors. *See Tolliver v. Sheets,* 594 F.3d 900, 930 n. 13 (6th Cir.2010).

In his motion for relief from judgment, Petitioner also faulted appellate counsel for not challenging trial counsel's impeachment strategy during trial and not raising the claim of prosecutorial misconduct on appeal. (ECF No. 20-25, PageID.864; ECF No. 20-28, PageID.895.) To the extent that the petition may be construed to raise such claims here, Petitioner's claims are meritless. The trial court observed that appellate counsel did in fact raise the issue of trial counsel's failure to pursue the impeachment of certain witnesses but that the court of appeals had previously "rejected this argument and upheld Defendants' trial counsel strategy . . ." (*Id.*) As discussed above, this Court cannot find that conclusion to be unreasonable.

Because the Court has found Petitioner's underlying challenges to be meritless, the Court again finds that appellate counsel cannot be found ineffective for declining to raise them. *See Coley*, 706 F.3d at 752.

Finally, to the extent that Petitioner also asserts that appellate counsel was ineffective for failure to raise claims for prosecutorial misconduct, not only is such a claim meritless as will be discussed in greater detail below, but as the trial court correctly observed, Petitioner raised this argument in his Standard 4 *pro per* brief. (ECF No. 20-28, PageID.896.) Petitioner "cannot show

prejudice for the failure to argue [prosecutorial misconduct] in this Court, because [Petitioner] himself was able to raise the issue, and appellate counsel's failure to do so was insignificant." (*Id.*) (alteration in original; internal citation omitted).

For each of the foregoing reasons, the Court will deny Petitioner's request for relief based upon ground X.

**D.     Claims Regarding False Statements and Prosecutorial Misconduct – Ground VI**

Petitioner contends that he was denied due process for two reasons: "the complainant [was] allowed to present false statements," and "the prosecution elicit[ed] false testimony." (Pet., ECF No. 1, PageID.38.)

The Fourteenth Amendment right to due process prohibits a state from the knowing and deliberate use of perjured evidence in order to obtain a conviction. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959). This claim encompasses use of testimony, whether elicited or left uncorrected, that the prosecutor knows or should know is false. *See Giglio v. United States*, 405 U.S. 150 (1972). "In order to establish prosecutorial misconduct for presenting false testimony, [petitioner] must show that (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew that it was false." *Roby v. Burt*, No. 17-2043, 2018 WL 1176512, at *4 (6th Cir Feb. 14, 2018) (citing *Peoples v. Lafler*, 734 F.3d 503, 516 (6th Cir. 2013)). "'The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony.'" *Id.* (quoting *Brooks v. Tennessee*, 626 F.3d 878, 895 (6th Cir. 2010)).

As support for his claim, Petitioner alleges that CR made "multiple contradicting statements," which Petitioner believes takes away from CR's credibility. (Pet., ECF No. 1,

PageID.38.) Petitioner cites CR's statements regarding dates of the sexual assaults and her failure to report the use of weapons during the assaults to the SANE Nurse. (*Id.*, PageID.39.) Petitioner contends that "[a]ll the evidence was in the possession of the prosecution" (*id.*), presumably implying that the prosecution should have been aware that CR's statements were inconsistent or contradictory.

First, contrary to Petitioner's argument that focuses on what Petitioner deems to be CR's presentation of false testimony, the presentation of perjured testimony by a witness, without more, does not rise to the level of a constitutional violation. *See Briscoe v. LaHue*, 460 U.S. 325, 327 (1983).

Second, mere inconsistencies in testimony do not establish that the testimony was false, and certainly fail to establish the knowing use of false testimony by the prosecutor. *Coe v. Bell,* 161 F.3d at 343. The fact that a witness contradicts himself or herself or changes his or her story also does not establish perjury. *Monroe v. Smith,* 197 F.Supp.2d 753, 762 (E.D.Mich. 2001). Petitioner has not provided this Court with any argument, let alone evidence, that would lead this Court to conclude that the testimony that Petitioner cites was actual perjury as opposed to mere inconsistency or contradictory testimony or that the prosecution was aware that a material statement was false.

Indeed, the court of appeals addressed Petitioner's argument regarding false statements as follows:

> In support of the contention that the prosecution knowingly elicited false testimony from CR, defendant merely provides the following conclusory statement: "The complainant [sic] [CR] gave testimony that was obviously contradicting to previously made statements and preliminary testimony that there is no doubt that the [prosecution] assisted with [CR's] 'lie.' " Defendant does not identify any

36

specific portions of CR's trial testimony that differed from her testimony at the preliminary examination. Nor does defendant specifically mention any of CR's trial testimony that was false. "Defendant may not leave it to this Court to search for a factual basis to sustain or reject his position." *People v. Petri*, 279 Mich. App. 407, 413; 760 N.W.2d 882 (2008).

Regardless of defendant's failure to provide this Court with any factual basis to support his argument, CR's inconsistent testimony between trial and the preliminary examination does not establish that the prosecution knowingly elicited false testimony. See *People v. Parker*, 230 Mich. App. 677, 690; 584 N.W.2d 753 (1998). Additionally, as noted above in the discussion of defendant's claim of ineffective assistance of counsel, defense counsel extensively cross-examined CR and impeached her with her preliminary examination testimony. Thus, defendant's argument fails.

*Russell I*, at *7 (footnote omitted). Petitioner has failed to demonstrate that the decision by the court of appeals resulted in an unreasonable determination of the facts or an unreasonable application of the clearly established federal law to the facts. As a result, Petitioner is not entitled to habeas relief on this ground IV.

### E.    Confrontation Claim – Ground VIII

Petitioner contends that CR "was allowed to leave the stand right as the defense brought into existence the fact that she had lied about multiple occasions which had occurred." (Pet., ECF No. 1, PageID.45.) Defense counsel had been impeaching CR until the trial court took a lunch break. (*Id.*, PageID.46.) When the trial court returned, it allowed expert witness Holly Rosen to testify due to a scheduling conflict (*id.*, PageID.47), but then returned CR to the stand for further cross-examination by defense counsel (*id.*, PageID.48). This does not present a violation of Petitioner's rights under the Confrontation Clause.

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. Const. amend VI; *Pointer v. Texas*, 380 U.S. 400, 403–05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The

37

central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause, therefore, prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 59 (2004).

However, as the Supreme Court has repeatedly reaffirmed, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer,* 474 U.S. 15, 20 (1985) (*per curiam*) (emphasis in original)). In rejecting Petitioner's Confrontation Clause argument, the Michigan Court of Appeals explained:

> Defendant finally argues that the prosecution violated his Sixth Amendment right to confront CR. We disagree.
>
> "The Confrontation Clause of the United States Constitution provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . ." *People v. Fackelman*, 489 Mich. 515, 524-525; 802 N.W.2d 552 (2011), quoting U.S. Const., amend. VI. Similarly, "Michigan has also afforded a criminal defendant the right to 'be confronted with the witnesses against him,' adopting this language of the federal Confrontation Clause verbatim . . ." *Id.* at 525 (citations omitted). "The Confrontation Clause is primarily a functional right in which the right to confront and cross-examine witnesses is aimed at truthseeking and promoting reliability in criminal trials." *People v. Nunley*, 491 Mich. 686, 697; 821 N.W.2d 642 (2012) (quotation marks and citation omitted).
>
> Defendant first asserts that the prosecution violated his Sixth Amendment right to confront CR by advancing "unbelievable objection[s] to keep from unmasking the antic[s]" of CR. It appears that defendant believes he was denied his Sixth Amendment right to confront CR without any interruption from the prosecution. Defendant's contention misunderstands the aims of the Confrontation Clause. Instead of allowing a defendant unfettered permission to cross-examine an adverse

witness, "the right of confrontation is concerned with a specific type of out-of-court statement, i.e., the statements of 'witnesses,' those people who bear testimony against a defendant." *Fackelman*, 489 Mich. at 528.

Defendant's assertion is better addressed as a challenge to his right to present a complete defense. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Unger*, 278 Mich. App. at 249 (quotation marks and citation omitted). However, a defendant does not have an absolute right to present evidence in his defense. *Id.* at 250. "A defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process," such as a state's power to "to establish and implement their own criminal trial rules and procedures." *Id.* (quotation marks and citation omitted). A defendant's right to present a defense is not infringed by enforcing the Michigan Rules of Evidence. See *id.* at 250-251 (discussing that the defendant's right to present a defense was not denied merely because evidence was excluded on the basis of MRE 402 and 703).

One of the "unbelievable objection[s]" that defendant identifies was a proper objection, made in accordance with the Michigan Rules of Evidence. The prosecution objected to defense counsel's elicitation of hearsay testimony under MRE 802. The trial court did not need to sustain the objection because defense counsel offered to rephrase the question to avoid eliciting hearsay. (Trial Transcript, April 19, 2018, pp. 154-155.) Because defense counsel rephrased the question to avoid eliciting hearsay, defendant was not denied the right to present a defense. Moreover, even if the objection had been sustained and defense counsel was not able to rephrase the question, enforcing the Michigan Rules of Evidence would not infringe defendant's right. *Unger*, 278 Mich. App. at 250-251.

Defendant has also identified an objection that was not made for an evidentiary reason, but instead, was made to clarify defense counsel's questions (Trial Transcript, April 19, 2018, p. 97). Additionally, defendant identified instances when the trial court addressed housekeeping matters, such as taking a break during trial or addressing a witness's scheduling conflict (Trial Transcript, April 19, 2018, pp. 99-100). Defendant's assertions regarding these matters lack merit because they did not affect defendant's ability to present a complete defense.

Defendant also argues that the prosecution released CR from testifying without the trial court's knowledge. However, a review of the record reveals that both parties had finished questioning CR, that the jury did not have any questions for CR, and that the trial court released CR as a witness (Trial Transcript, April 19, 2018, p. 170). Thus, defendant's argument fails.

*Russell I*, at *7–8.

The court of appeals applied the correct Sixth Amendment standard, functionally equivalent to that set forth by the United States Supreme Court, and, as the court of appeals observed, defense counsel had the opportunity to thoroughly cross-examine CR. Petitioner provides the Court with no support for his claim that the fact that defense counsel could continue to cross examine CR only after a break rises to the level of a violation of the Confrontation Clause. It does not. Petitioner is not entitled to relief on this ground VIII.

### F.      Speedy Trial Claim – Ground IX

Petitioner claims that he was denied a speedy trial. (Pet., ECF No. 1, PageID.51.) Petitioner did not previously raise this claim before the state courts and, therefore, for the reasons discussed above, his claim is unexhausted and procedurally defaulted. However, the Court will nonetheless address Petitioner's claim on the merits as he is not entitled to relief.

In *Brown v. Romanowski*, 845 F.3d 703 (6th Cir. 2017), the Sixth Circuit Court of Appeals reviewed the clearly established federal law with respect to the constitutional requirement for a speedy trial:

> The Sixth Amendment guarantees in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. These rights apply to the states through the Fourteenth Amendment. *Klopfler v. North Carolina*, 386 U.S. 213, 223 (1967). The purpose of the speedy-trial guarantee is to protect the accused against oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal charges, and the risk that evidence will be lost or memories diminished. *Doggett v. United States*, 505 U.S. 647, 654 (1992); *United States v. Loud Hawk*, 474 U.S. 302, 312 (1986); *United States v. MacDonald*, 456 U.S. 1, 7–8 (1982); *Barker v. Wingo*, 407 U.S. 514, 532–33 (1972); *United States v. Marion*, 404 U.S. 307, 320 (1971); *United States v. Ewell*, 383 U.S. 116, 120 (1966). The sole remedy for a violation of the speedy-trial right is dismissal of the charges. *See Strunk v. United States*, 412 U.S. 434, 439–40 (1973); *United States v. Brown*, 169 F.3d 344, 348 (6th Cir. 1999).

> In *Barker*, the Supreme Court established a four-factor test for determining whether a defendant has been denied the constitutionally guaranteed right to a speedy trial. *Barker* held that a court must consider (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530. No one factor is dispositive. Rather, they are related factors that must be considered together with any other relevant circumstances. *Id.* at 533.

*Brown*, 845 F.3d at 712. The *Barker* Court acknowledged that its test was a flexible balancing test and, thus, "necessarily compels courts to approach speedy trial cases on an *ad hoc* basis." *Barker*, 407 U.S. at 529–530. The flexibility of the test has significant implications for this Court's review under the AEDPA standard. "'The more general the rule at issue'—and thus the greater the potential for reasoned disagreement among fair-minded judges—'the more leeway [state] courts have in reaching outcomes in case-by-case determinations.'" *Renico v. Lett*, 559 U.S. 766, 776 (2010) (quoting *Yarborough*, 541 U.S. at 664).

In the Michigan state courts, the right to a speedy trial is guaranteed by the United States constitution, U.S. Const. amend VI; the Michigan constitution, Mich. Const. 1963 art.1, § 20; state statute, Mich. Comp. Laws § 768.1; and court rule, Mich. Ct. R. 6.004(D). *People v. Cain*, 605 N.W.2d 28, 39 (Mich. Ct. App. 1999); *People v. McLaughlin*, 672 N.W.2d 860, 867 (Mich. Ct. App. 2003). The Michigan state courts apply the *Barker* four-factor test "to determine if a pretrial delay violated a defendant's right to a speedy trial[,]" whether the speedy trial right at issue arises from federal or state law. *Cain*, 605 N.W.2d at 39 (citing *People v. Collins*, 202 N.W.2d 769 (Mich. 1972)).[3] To the extent that the state constitutional, statutory, and rule guarantees relating to a

---

[3] Although the state courts apply the clearly established federal law, the *Barker* test, to evaluate "speedy trial" claims, they apply it a little differently than the federal courts. The state courts shift the burden of proof with respect to prejudice based on the length of the delay, drawing the line at 18 months. *Cain*, 238 Mich. App. at 112. The federal courts, however, eschew such a "bright-line rule." *Brown*, 845 F.3d at 717. Instead, the federal "courts must conduct a functional analysis of

speedy trial require anything more than clearly established federal law requires, those additional requirements are purely matters of state law. As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id*. at 67–68.

Here, as to the length of the delay, the Court notes that Petitioner was arrested on April 20, 2017, for events that took place earlier that month. (Prelim. Exam. Tr., ECF No. 20-2, PageID.458.) Trial was scheduled to begin in March 2018, "due to the [trial court's] schedule," because the trial court had "so many capital trials filling up [its] docket." (Aug. 22, 2017, Tr., ECF No. 20-4, PageID.528.) Courts have generally found post-accusation delays that approach one year to be "presumptively prejudicial" requiring an analysis of the remaining *Barker* factors. *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992).

With respect to the second factor,

[t]he Supreme Court has cataloged the possible reasons for a delay into three general buckets tied to the party at fault. *See Romanowski*, 845 F.3d at 714. In bucket one, this reason-for-delay factor weighs strongly against the government if the government engineers a delay in bad faith "to hamper the defense" or obtain a tactical advantage. *Barker*, 407 U.S. at 531. In bucket two, this factor still weighs against the government (but less so) if it causes the delay for an invalid reason but without any bad intent. Examples of this second type of delay include the executive branch's "negligence" in tracking down a defendant or the judicial branch's "overcrowded" dockets. *Doggett*, 505 U.S. at 652; *Barker*, 407 U.S. at 531. In bucket three, this factor weighs in favor of the government if it identifies a legitimate reason for the delay or if the defendant causes it. *Barker*, 407 U.S. at 531. Examples of this third type of delay include the federal government's decision to wait for the state government to prosecute the defendant for the same conduct, *see Schreane*, 331 F.3d at 554–55, defense counsel's decision to litigate pretrial

_____

the right in the particular context of the case." *Id*. (internal quotation marks omitted) (quoting *United States v. Ferreira*, 665 F.3d 701, 709 (6th Cir. 2011)); *see Barker*, 407 U.S. at 522. This is a difference between the federal and state applications of the test, but the difference does not render the state court's application unreasonable or contrary to *Barker*. *See, e.g.*, *Brown v. Bobby*, 656 F.3d 325, 329–330 (6th Cir. 2011) (concluding that Ohio's use of a 270-day rule was not "contrary to" *Barker*).

motions or ask for continuances, *see Young*, 657 F.3d at 415–16, or the defendant's decision to seek new counsel, *see Brown*, 498 F.3d at 531.

*United States v. Allen*, 86 F.4th 295, 304–05 (6th Cir. 2023), *cert. denied,* No. 23-7374, 2024 WL 2805855 (U.S. June 3, 2024), and *cert. denied sub nom. Davis v. United States*, No. 23-7462, 2024 WL 2883867 (U.S. June 10, 2024).

The third factor "relates to 'the defendant's responsibility to assert his right,' and its effect will depend on the other factors." *Miles v. Jordan*, 988 F.3d 916, 925 (6th Cir. 2021) (quoting *Barker*, 407 U.S. at 531). "The more serious the deprivation, the more likely a defendant is to complain." *Id*.

Here, Petitioner asserted his right to a speedy trial only a single time, and the trial court reiterated that its "congested docket" was at fault for any delay. In December 2017, Petitioner moved for bond as a result of the passage of time in bringing the case to trial.[4] (Dec. 13, 2017, Tr., ECF No. 20-5.) In his motion, Petitioner cited Michigan's 180-day rule,[5] but did not point to any particular prejudice to Petitioner's ability to raise a successful defense. (*Id.*, PageID.535.) The trial court denied Petitioner's request. The trial court explained that any delay was the result of the court's "congested docket due to the number of capital cases," that Petitioner "has really demonstrated a propensity for violence," and that clear and convincing evidence exists to show that Petitioner presents a danger to the community, including persons testifying in the case. (*Id.*, PageID.538–40.) The only scheduling delay not caused by trial court's docket was a request from defense counsel, who had another trial scheduled for March 28, 2018. (Jan. 16, 2018, Tr., ECF

---

[4] "The Sixth Circuit recognizes a request for bail as the functional equivalent of the request for a speedy trial." *Maples v. Stegall*, 427 F.3d 1020, 1029 (6th Cir. 2005) (internal citations omitted).

[5] Michigan's 180-day rule "requires dismissal with prejudice if a prisoner is not brought to trial within the 180–day time limit set forth in [MCL 780.133]." *People v. Williams*, 475 Mich. 245, 252, 716 N.W.2d 208, 213 (2006).

NO. 20-6, PageID.545.) Jury selection began on March 26, 2018 (Mar. 26, 2018, Tr., ECF No. 20-8), with the trial beginning on April 17, 2018 (Apr. 17, 2018, Tr., ECF No. 20-9). Petitioner has presented no evidence to suggest any bad faith or tactical reasons for the delay on the part of the prosecution.

Finally, "[i]n this circuit, the defendant is required to show that the delay caused substantial prejudice." *Brown*, 845 F.3d at 716; *see also United States v. Love,* 178 F.3d 1297 (6th Cir.1999) (discussing only actual prejudice, even where delay was 21 months). As support for his claim that he was prejudiced by the delay, Petitioner now claims that the passage of time affected CR's memory, leaving her to appear confused, the trial court made evidentiary rulings against him, and the trial court allowed CR to take a break during her testimony (Pet., ECF No. 1, PageID.51–52). Petitioner fails to offer any explanation for his assertion that CR's appearance of confusion somehow prejudiced Petitioner in his defense. Common sense would lead the Court to the opposite conclusion. Petitioner also fails to provide the Court with any support for his claim that the trial court's procedural or evidentiary decisions were the result of any delay in bringing Petitioner to trial. The Court fails to see any logical connection between the two.

In considering each of the *Barker* factors, the Court finds that Petitioner has not shown any violation of his right to a speedy trial. Although the delay in bringing Petitioner to trial approached one year, the record establishes that the trial court's congested docket was the primary reason for the delay and Petitioner has not shown that he was prejudiced as a result. Therefore, Petitioner is not entitled to relief on this claim.

## IV.   Pending Motions

Presently before the Court are Petitioner's motion to supplement his habeas petition (ECF No. 25), and four motions to supplement or amend Petitioner's reply brief (ECF Nos. 24, 27, 28, 29).

44

A.      **Motion to Supplement the Petition**

Petitioner has requested to supplement his § 2254 petition with additional arguments "that [CR] had a motive to commit perjury." (ECF No. 25, PageID.3408.) With his motion, Petitioner provides a narrative of his own version of the events, which differs from CR's testimony. (*Id.*, PageID.3408–3420.)

Amendment and supplementation of § 2254 petitions are governed by Rule 15 of the Federal Rules of Civil Procedure. *See Oleson v. United States*, 27 F. App'x 566, 568 (6th Cir. 2001) (explaining that an application for a writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"). Rule 15(a)(1) provides that a party may amend a pleading once as a matter of course no later than the earlier of the two following periods: (1) 21 days after service; or (2) 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f). *See* Fed. R. Civ. P. 15(a)(1)(A)-(B). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." *See id.*, 15(a)(2). In evaluating the interests of justice, the Court should consider several factors, including "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment[.]" *Coe,* 161 F.3d at 341 (quoting *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)).

Here, the Court will deny Petitioner's request to supplement his petition because Petitioner's requested supplement is futile and, therefore, supplementation does not serve the interests of justice. The fact that Petitioner has set forth a version of events that differs from the testimony provided by CR at trial does not render CR's testimony "perjury" and, beyond that, does nothing to demonstrate the knowing use of false testimony by the prosecutor, as would be required

45

to support a claim for prosecutorial misconduct, as discussed above. *See Coe,* 161 F.3d at 343. At trial, both CR and Petitioner testified, presenting their versions of the events to the jury. The jury rejected Petitioner's description of the events. It is the province of the fact finder, not this Court, to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, this Court is required to afford a presumption of correctness to the state court's factual findings absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Davis*, 658 F.3d at 531. Nothing within Petitioner's supplement rises to the level of clear and convincing evidence that would allow the Court to reject the state court's factual findings.

Because Petitioner's proposed supplementation fails to provide any support for his arguments for habeas relief, the Court will deny Petitioner's motion to supplement his petition (ECF No. 25.)

### B.    Motions to Supplement Petitioner's Reply Brief

Petitioner has also filed four motions to supplement Petitioner's reply brief. The Federal Rules of Civil Procedure specifically address filing supplemental pleadings. *see* Fed. R. Civ. P. 15(d), but a supplemental *brief* in support of a motion is not a "pleading," *see* Fed. R. Civ. P. 7(a) (listing the types of permissible pleadings), and is therefore not governed by Rule 15.

According to the Rules Governing Section 2254 and 2255 Cases, "[t]he petitioner may submit a reply to the respondent's answer or other pleading within a time fixed by the judge." Rule 5(e) of the Rules Governing Section 2254 Cases. On September 27, 2023, the Court entered an order (ECF No. 11) directing Respondent to submit an answer to the petition and ordering that "Petitioner may submit a reply to the Respondent's answer within 42 days after the answer is filed." Petitioner's reply brief and attachments totaled 109 pages. (ECF No. 23.)

Courts within this Circuit have generally adopted a standard requiring a party to show good cause for filing a supplemental brief. *See Dassault Systemes, S.A. v. Childress*, No. 09–10534, 2010 WL 2854339, at \*3 (E.D. Mich. July 20, 2010), *rev'd in part on other grounds*, 663 F.3d 832 (6th Cir. 2011); *Harshaw v. Bethany Christian Servs.*, No. 1:08–cv–104, 2010 WL 610262, at \*1 (W.D. Mich. Feb. 19, 2010). Here, Petitioner makes no effort to demonstrate good cause for failing to include his arguments within the single reply brief permitted by the Rules and this Court's order.

While Petitioner is entitled to some indulgence as a *pro se* party, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), "the lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). "'[I]t is incumbent on litigants, even those proceeding *pro se*, to follow the . . . rules of procedure,'" *Fields v. County of Lapeera*, 2000 WL 1720727 at \*2 (6th Cir. Nov. 8, 2000) (ellipses in original, citation omitted), and most certainly orders of the Court. *See, Downs v. Westphal*, 78 F.3d 1252, 1257 (7th Cir. 1996) (stressing that "being a *pro se* litigant does not give a party unbridled license to disregard clearly communicated court orders," or to "choose which of the court's rules and orders it will follow, and which it will wilfully disregard"). Being a *pro se* litigant does not permit a party to simply ignore a Court's clearly communicated deadlines. *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991); *Cunningham v. Enagic USA, Inc.*, 2016 WL 5415106 at \*1 (M.D. Tenn. Sept. 28, 2016) (Sharpe, J.); *Mayers v. Ellis*, 2016 WL 891181 at \*5 (M.D. Tenn. Mar. 8, 2016) (Trauger, J.); *Smith v. Woods*, 2015 WL 8055912 at \*1 (M.D. Tenn. Dec. 4, 2015) (Haynes, J.).

The Court provided Petitioner with a deadline to file a single reply brief permitted by the Rules Governing Section 2254 and 2255 Cases. Petitioner filed his reply. Petitioner's *pro se* status does not grant Petitioner the right to file additional briefs *ad nauseum* in an effort to support his

original claims. Accordingly, the Court will deny Petitioner's motions to supplement his reply brief (ECF Nos. 24, 27, 28, 29).

## V.      Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a

constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

<u>**Conclusion**</u>

The Court will enter an order and judgment denying the § 2254 petition as well as a certificate of appealability. The Court will further deny Petitioner's motion to supplement his habeas petition (ECF No. 25), and four motions to supplement or amend Petitioner's reply brief (ECF Nos. 24, 27, 28, 29).


Dated:      August 21, 2024               /s/ Robert J. Jonker
                                        Robert J. Jonker
                                        United States District Judge